IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EUGENE L. SUDZEKO, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-03-1541-HE |
| ) | |
| GENERAL MOTORS CORPORATION, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are defendants' motions for summary judgment.[1] Plaintiff has responded in opposition to the motions. Upon review, the Court concludes the defendants' motions should be granted.

Plaintiff filed this action against the defendants raising claims of age discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634. He also raises claim of "wrongful discharge," and negligence against defendant General Motors (hereinafter "GM") pursuant to Oklahoma law, and claims of breach of contract and failure to represent against defendants pursuant to federal labor law.[2] In

---

[1] *The defendants in this action are plaintiff's employer, General Motors Corporation, the United Automobile, Aerospace, Agricultural Implement Workers of America International Union, and the UAW-Local Union No. 1999.*

[2] *Plaintiff does not cite federal labor law in his complaint or responses to the motions for summary judgment, however, he admits he is bringing a "hybrid" § 301/unfair representation action against his employer and the unions for breach of the collective bargaining agreement and failing to represent his interests. See § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. See also Edwards v. Int,l Union, United Plant Guard Workers of Am., 46 F.3d 104, 1051 (10th Cir. 1995) ("Where an employee can prove he suffered a wrongful discharge in violation of a collective-bargaining agreement that would have been remedied through the grievance process had*
*(continued...)*

particular, plaintiff alleges he was denied a promotion, improperly trained, and demoted because of his age and in retaliation for opposing age discrimination. He further claims that the defendant unions failed to represent his interests in these matters by failing to either file or pursue grievances on his behalf with GM.

In its motion for summary judgment, GM asserts it is entitled to summary judgment on plaintiff's age claims because he has failed to demonstrate that its reasons for not promoting plaintiff and transferring him to another position were merely a pretext for age discrimination or retaliation. It also asserts that plaintiff's state law claims are either preempted or without merit. In their motions for summary judgment, defendant unions assert plaintiff's claims against them are either barred by the statute of limitations, subject to dismissal for failure to exhaust internal union remedies, or without merit.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999), overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S.

---

²(...continued)
*the union fulfilled its statutory duty to represent the employee fairly, federal law will provide a remedy.") (citing Vaca v. Sipes, 386 U.S. 171, 185-86 (1967)).*

356 (2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Martin, 190 F.3d at 1129. "In cases such as this, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (internal quotations omitted).

## FACTS

Plaintiff, who was born in 1936, has been employed by GM since 1975 as a stationary engineer. Sometime during 2002, GM hired an outside contractor to automate the boiler room operations where plaintiff worked. In the summer of 2002, GM provided training on the new systems to the affected employees in the boiler room. Although attendance records reflect that plaintiff "signed in" to the training, he states that he was unable to attend the training because he was on leave. In September of 2002, plaintiff attended a meeting with management personnel and his union representative related to plaintiff's inability to operate the new computer system.[3] Further training was discussed during this meeting, however, plaintiff alleges that no "true" training was ever provided to him on the actual operating system. He admits GM provided him with several hundred hours of basic computer training

---

[3] *This meeting was prompted by plaintiff's statement to a contract employees that he knew "how to run the equipment manually , but not with the computer," Pl's. Dep., p. 28,*

during the months of November through February.[4]

During the time plaintiff was attending computer training, GM posted a job opening in "A/C repair." Although the job paid two cents less than his current job, plaintiff, who worked a seven day shift schedule, desired the five day shift offered with the A/C position because it was easier to obtain overtime and weekend pay. Plaintiff applied for the job in January of 2003. In his application, plaintiff provided GM with information that he had completed an apprenticeship in stationary engineering and had accumulated nine years of air conditioner repair experience between 1965-1974. Pl's. Aff., p. 2. He also provided GM with a copy of his A/C license and claims GM knew he had done A/C repair as part of his boiler room duties when he first arrived at the plant in the 1970's.[5] Plaintiff was neither interviewed nor selected for the position. Instead, the job was given to Timothy Adams, a younger worker who had worked for GM since 1979, and had accumulated over 39,000 hours of A/C repair experience since 1980. Plaintiff is not aware of who at GM was responsible for interviewing prospective candidates or for making the final decision on hiring for the position.[6]

After plaintiff had completed his computer training, another meeting was held in early

---

[4] *GM apparently provided plaintiff with this additional training after plaintiff admitted he was "the only one in the boiler room that said [he] didn't know the computer or didn't know the computer so much as the operation of the computer." Pl's. Dep., p. 38.*

[5] *According to plaintiff, "the boiler room used to do air conditioning" until it was separated "a little while after" he became employed. Pl's. Dep., p. 64.*

[6] *Plaintiff learned sometime in March that the position had been filled.*

March to discuss plaintiff's ability to operate the computer equipment in the boiler room.[7] As a result of this meeting, plaintiff was provided with additional computer training specific to the computerized system in the boiler room. GM claims that this training consisted of twenty-two hours of hands on training between plaintiff and an outside consultant. Plaintiff claims that, although he met with an outside consultant, the training lasted only for about thirty minutes before a malfunction occurred in the equipment.

     A final meeting with management and union representatives was held on Friday, April 11, 2003. When asked at that meeting if he could safely perform his job in the boiler room, plaintiff stated that no one could perform the job and that he had not been adequately trained. Management officials then directed plaintiff to report to a different facility on Monday, April 14, 2003. At the conclusion of the meeting on Friday, plaintiff signed three grievances prepared by his union representative, Jim Olivas. The grievances related to GM's failure to award plaintiff the A/C repair position, its failure to provide plaintiff with adequate training, and its improper notification to plaintiff of a "shift change" allegedly in violation of the collective bargaining agreement. Plaintiff did not request a copy of these grievances from Mr. Olivas.

     On that next Monday, plaintiff reported as directed and was told to begin working on the assembly line in the plant production department. After approximately two hours, plaintiff requested and was granted an indefinite period of sick leave which plaintiff is still

---

[7] *Plaintiff claims this is when he complained to management about not receiving the A/C repair position because of his age. Pl's. Dep., pp. 78-79.*

on as of this date. Before leaving the plant, plaintiff spoke with Mr. Olivas but did not instruct him to file any further grievances. Thereafter, plaintiff made no effort to contact any union official regarding the status of his grievances.[8] In spite of this, Mr. Olivas states that he investigated the facts and circumstances of the grievances and determined they were without merit. As a result, he withdrew the grievances "without prejudice" on September 13 and 14, 2003.

Plaintiff filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 14, 2003, alleging age discrimination. He filed his second charge alleging retaliation on August 7, 2003. The instant action was filed by plaintiff on November 5, 2003.

## DISCUSSION

Age Discrimination

Plaintiff claims he was not "promoted"[9] to the A/C repair job because of his age.[10]

---

[8] *Plaintiff claims not to have learned about the results of his grievances until he was deposed in this matter in 2004.*

[9] *GM disputes whether the A/C repair job should be considered a promotion since it involved a two cent pay cut. However, for purposes of this order, the Court presumes it was a promotion based on plaintiff's undisputed description of the desired work schedule.*

[10] *Plaintiff relies on circumstantial evidence to prove his claims of age discrimination. Accordingly, the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies to plaintiff's claims. Under this analysis, the plaintiff must first present evidence to support a prima facie case of discrimination. English v. Colo. Dept. of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001). If a prima facie case is demonstrated, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. Id. The burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. Id.*

In order to survive summary judgment on this claim, plaintiff must establish a prima facie case of discrimination. Plaintiff meets this burden by establishing that: (1) he belongs to a protected class; (2) he applied for and was qualified for a job for which the defendant was seeking applicants; (3) he did not receive the position; and (4) the position was not eliminated. <u>See</u>, <u>e.g.</u>, <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 796-97 (10th Cir. 2000).

Plaintiff has established a prima facie case. He is a member of a protected class, he applied for and was ostensibly qualified for the positions in question, he did not receive the position and the position was not eliminated but was filled with another applicant.

Because plaintiff has established a prima facie case, the burden shifts to defendant GM to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for denying plaintiff the promotions. <u>English</u>, 248 F.3d at 1008. Here, GM states that another candidate provided verified information regarding his A/C experience and was better qualified than plaintiff. These reasons are adequate to rebut plaintiff's prima facie case. <u>Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1328 (10th Cir. 1999). As a result, the burden shifts back to plaintiff to demonstrate that the defendant's reasons are pretextual. <u>English</u>, 248 F.3d at 1008.

Pretext may be shown by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999) (quoting

Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997)). However, this showing must be made by reference to affidavits, deposition transcripts, or specific exhibits. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir.1998). Repeated, unsupported assertions by plaintiff that a defendant's action were based on age are insufficient to defeat summary judgment. See L & M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir.2000) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact.").

As evidence of pretext, plaintiff points to his qualifications for the A/C repair job as compared to the candidate chosen for the position. While plaintiff hypothesizes that he was the best qualified candidate for the position, he is merely attempting to substitute his judgment for that of the employer's. However, it is not plaintiff's perception of his qualifications that matters in determining pretext. See Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir.1996). See Simms, 165 F.3d at 1329 (finding that an employee's own opinions about his qualifications do not give rise to a material factual dispute). Instead, when assessing a contention of pretext, the Court examines the facts as they appeared to the person making the decision to promote. Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1261 (10th Cir.2001). See Jones v. Barnhart, 349 F.3d 1260, 1267-68 (10th Cir. 2003) (court does not sit as a super personnel department to second guess the decision of the employer). The record clearly establishes that the candidate chosen for the position provided verified documentation of his substantial and continuous experience in A/C repair. While plaintiff also appears to have the requisite experience, he provided no verified information suggesting

8

that he had worked in the field since the 1970's. As this is not a case in which the facts demonstrate that plaintiff was better qualified than the candidate selected for the position, the Court will not infer pretext merely from the non-selection of plaintiff for the position. See Jones, 349 F.3d at 1267. Accordingly, summary judgment is **GRANTED** in favor of GM on plaintiff's age discrimination claim.

Retaliation

Plaintiff alleges he complained of age discrimination when he failed to receive the A/C repair job. Afer complaining, he asserts that GM retaliated against him by transferring him to a non-skilled position in the plant.

The ADEA forbids an employer from discriminating against an employee because he "has opposed any practice made unlawful" by the statute. 29 U.S.C. § 623(d). To establish a prima facie case of retaliation under the ADEA, plaintiff must show (1) he engaged in protected activity; (2) he suffered an adverse employment action either after, or contemporaneously with, his protected activity; and (3) a causal connection exists between his protected activity and the adverse action. Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1507 (10th Cir.1996).

GM does not dispute plaintiff's prima facies case, but argues it had a legitimate, nondiscriminatory reason for transferring plaintiff due to his lack of ability to safely perform his job in the boiler room. Plaintiff has failed to demonstrate that the defendant's proffered reason for transferring him is pretextual.

Although plaintiff claims that the training provided to him was inadequate, he does

9

not allege he was treated differently from other similarly situated employees. Instead, the record demonstrates plaintiff received substantial training in addition to that provided to other employees and was either unwilling or unable to master even the basic functions of a computer. While plaintiff may have desired further training in order to bring his skills to an acceptable level, the defendant was not obligated to provide it simply because he was in a protected class. See E.E.O.C. v. Sperry Corp., 852 F. 2d 503, 509 (10th Cir. 1988) (finding that the ADEA does not require special treatment for those in the protected class). As plaintiff admitted that he was unable to perform his job at an acceptable level, GM's act of transferring plaintiff was not inconsistent, implausible, or otherwise discriminatory. Accordingly, summary judgment is **GRANTED** in favor of GM on plaintiff's retaliation claim.

"Wrongful Discharge"

Despite the fact that plaintiff has not been discharged from his employment with GM, he brings a state law claim of wrongful discharge based on GM's alleged "interference with the employment relationship."[11] Specifically, plaintiff alleges GM violated Oklahoma public policy when it disciplined him for refusing to "power up" an unsafe boiler and then retaliated against him for reporting his concerns to the Occupational Safety and Health Administration ("OSHA").

---

[11] *Commonly referred to as a Burk tort, this claim recognizes "a narrow remedy and exception to the employment-at-will doctrine . . . for those employees discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Griffin v. Mullinix, 947 P.2d 177, 178 (Okla. 1997) (citing Burk v. K-Mart Corp., 770 P.2d at 24 (Okla. 1989) (internal quotations omitted)).*

Plaintiff's claim fails. As previously noted, plaintiff has not been terminated from his employment. See Davis v. Bd. of Regents for Okla. State Univ., 25 P.3d 308, 310 (Okla. Ct. App. 2001) ("Essential to a public policy tort discharge claim, however, is the actual termination of the employer-employee relationship."). In addition, he has failed to identify a well-defined public policy of the State of Oklahoma applicable to a private employer which has been violated. See Griffin, 947 P.2d at 180 ("[N]o Oklahoma articulation of public policy exists with regard to the private employer under the Oklahoma Occupational Safety & Health Standards Act and the federal statute, in itself, does not stand as a statement of Oklahoma public policy."). As both of these essential elements are absent, GM is **GRANTED** summary judgment on plaintiff's wrongful discharge claim.

Negligence

Plaintiff also seemingly sets forth a tort claim against GM for negligent hiring, training, supervision and retention.[12] GM responds to this claim by asserting it is preempted by federal labor law because it requires the interpretation of the collective bargaining agreement. GM also asserts that plaintiff has failed to demonstrate it had prior knowledge of any GM employee's propensity to commit an alleged tort against the plaintiff. See N.H. v. Presbyterian Church, 998 P.2d 592, 600 (Okla. 1999) (an employer may be found liable for a negligence claim, "if--at the critical time of the tortious incident--, the employer had reason to believe that [an employee] would create an undue risk of harm to others").

---

[12] Plaintiff raised these allegations in his complaint but did not designate a separate claim of negligence against defendant GM.

Plaintiff does not respond to these arguments with either facts or evidence in his response to GM's motion for summary judgment. Upon review of the record, the Court concludes plaintiff has failed to raise a genuine issue of material fact with respect to this claim. Accordingly, summary judgment is **GRANTED** in favor of GM on plaintiff's claim for negligent hiring, training, supervision or retention.

Hybrid Claim

Although not clear from the complaint, it appears plaintiff has alleged a claim for breach of the collective bargaining agreement and breach of the duty of fair representation against GM and the unions. Commonly referred to as "hybrid" § 301 claim, "plaintiff must prove both breaches in order to prevail" on such a claim. Aguinaga v. United Food and Commercial Workers Intern. Union, 993 F.2d 1463, 1469 n.1 (10th Cir. 1993).

Here, the Court has already determined that GM did not discriminate or retaliate against plaintiff by denying him a promotion or transferring him to another position. Therefore, his hybrid claim necessarily fails. Id. Nevertheless, even if the Court had concluded otherwise, plaintiff has failed to produce evidence sufficient to create a factual dispute as to whether the unions' actions were irrational, invidiously discriminatory against him, or were conducted in a fraudulent, deceitful or dishonest manner. Nelson v. Holmes Freight Lines, Inc., 37 F.3d 591, 594 (10th Cir. 1994).

Plaintiff claims the unions breached their duty of fair representation when they failed to give him a copy of his grievances, failed to keep him informed of the status of his grievances and failed to insure he received proper computer training. Plaintiff has failed to

offer any facts or legal authority in support of his argument. However, the evidence, even when viewed in a light most favorable to plaintiff, does not demonstrate a breach by the unions. The record demonstrates that grievances were filed on plaintiff's behalf and investigated, in spite of plaintiff's lack of interest in their outcome. Even if the unions' actions could be viewed as inadequate, "[s]imply showing that the union did not represent [plaintiff] as vigorously as it could have does not establish a section 301 violation." Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 531 (10th Cir. 1992). See also Nelson, 37 F.3d at 594 ("Acts by the union which are merely negligent do not state a claim for breach of a duty of fair representation."). As a result, summary judgment is **GRANTED** in favor of the defendants on plaintiff's hybrid § 301 claim.[13]

---

[13] *In light of this conclusion, it is unnecessary to consider the union defendants' alternate grounds based on the statute of limitations and exhaustion of administrative remedies.*

## **CONCLUSION**

In accordance with the above findings of the Court, the defendants' motions for summary judgment are **GRANTED**.

**IT IS SO ORDERED**.

Dated this 27th day of May, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE